IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

**DONALD RAY LOGSDON, JR.,**

               Plaintiff,

v.

**DORIS CRAWFORD and
LOYD LONDON,**

               Defendants.

Case No. 21-252-JFH-JAR

**OPINION AND ORDER**

Plaintiff Donald Ray Logsdon, Jr. ("Logsdon"), is a pro se federal prisoner who is incarcerated at the United States Penitentiary in Leavenworth, Kansas. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations occurring during his incarceration as a pretrial detainee in the Pittsburg County Jail ("the jail") in McAlester, Oklahoma. The defendants are Doris Crawford ("Crawford"), the jail's nurse, and Loyd London ("London"), Chief of Security at the jail.

The Court has before it for consideration Logsdon's amended complaint [Dkt. No. 13] and London's motion to dismiss [Dkt. No. 22]. The amended complaint raises two claims, however, only the first claim concerns London. Logsdon has not filed a response to the motion to dismiss.

**I. PLAINTIFF'S ALLEGATIONS**

Logsdon alleges in his first claim that while incarcerated in the jail on an unknown date, he began receiving an unknown pill in his daily medications. He took the pill, but immediately sent Nurse Crawford an electronic request to staff, asking what it was. She, however, did not respond. The next day he received the unknown pill again. He again took the pill and sent another electronic request to Crawford, explaining the unknown pill was not prescribed for him. When he

did not receive an answer, Logsdon wrote to Pittsburg County Sheriff Chris Morris, Undersheriff Frankie McLendon, Jail Administrator Melina Penrod, Defendant London, and Assistant Chief of Security Jeff Daniels, advising that the nurse had given him a pill that had not been prescribed for him. Logsdon states his family identified the pill as meloxicam. Dkt. No. 13 at 4, 7.

Although Logsdon maintains the pill was not prescribed for him, he apparently took it each day it was delivered to him. He alleges that on the eighth day of his receiving the medication, he had to be taken to the McAlester Regional Health Center because his stomach lining was tearing. The doctor in the emergency room allegedly said that the meloxicam was "eating holes in his stomach," and the doctor wrote directions for the nurse to discontinue the medication. *Id.* at 7.

The next day London took Logsdon from his cell to the nurse's office, where Crawford apologized for the medication mistake and stated it would not happen again. Logsdon said, "OK." The next day, London said he would buy Logsdon's breakfast and asked Logsdon what he wanted. Logsdon asked for McDonald's, and the following morning London gave him a bag of food from McDonald's. As Logsdon was eating the food, London walked by and said, "OK, now we're even for the nurses [sic] mistake." *Id.* at 7-8.

## II. STANDARD OF REVIEW

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true,

even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of London's motion.

### III. DISCUSSION

London alleges Logsdon has not demonstrated London's personal participation in any alleged constitutional violations. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). A plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433,

1441 (10th Cir. 1996).  Supervisory status is not sufficient to support liability under § 1983.  *Id*. *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  *See also Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.").

Here, the Court finds the amended complaint makes no specific, non-conclusory allegations that raise any reasonable inference that London violated any of Logsdon's constitutional rights.  The only factual allegations concerning London are that Logsdon wrote to London, informing London that Crawford was giving him a pill that was not prescribed for him; that London took Logsdon to the nurse's office where she apologized for giving him the wrong medication; and that London brought Logsdon breakfast from McDonald's in an attempt to make up for Crawford giving Logsdon the wrong medication.  Dkt. No. 13 at 7-8.

London claims that Logsdon's allegation that he wrote to London about his receiving the wrong medication does not raise a plausible constitutional claim.  Logsdon asserts in the amended complaint, "I wrote Sheriff, Chris Morris, Undersheriff Frankie McLendon, Jail Administrator Melinda Penrod, Chief of Security Lloyd London, and Asst. Chief of Security Jeff Daniels explaining that the nurse had been giving me a pill not prescribed to me."  Dkt. No. 13 at 7.  He makes no mention in the amended complaint of his knowledge that London would not have received the notices that were sent to the nurse and also intended for London.  This is in contrast to his allegation in the original complaint that:

> The nurse, Doris Crawford, gave me the wrong medication for 8 days in a row.  I documented this numerous times on the jails [sic] electronic request to staff.  I documented it to the nurse, chief of security, Jeff Daniels, the jail administrator, the undersheriff and the sheriff.  *I did not know until later that the sheriff, the undersheriff, and the chief of security do not receive these electronic requests*.

4

Dkt. No. 1 at 5 (emphasis added).

This admission in the original complaint, which clearly indicates London's lack of participation or knowledge, is omitted from the amended complaint, and Logsdon has not addressed the discrepancy by responding to the motion to dismiss.[1]  In a slightly revised version of the facts in the amended complaint, Logsdon infers London knew of the medication issue, but London acknowledged the issue and took Logsdon from his cell to see the nurse only after Logsdon returned from an emergency room visit.  Dkt. No. 13 at 7.  After careful review, the Court finds that both versions of the story show that once the medication error was discovered by London, the issue was addressed promptly.

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

---

[1] An amended complaint completely replaces the original complaint and renders the original complaint of no legal effect.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990).  *See also* Local Civil Rule 9.2(c).  The Court, however, is not required to ignore the allegations in the original complaint where a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss."  *Ashley v. United States*, No. 1:20-CV-0154-SWS/MLC, 2020 WL 8996805 at *6 n.8 (D.N.M., 2020).  Here, Logsdon appears to have changed the facts concerning Defendant London after this Court entered an Opinion and Order addressing the requirement of personal participation of the defendants.  Dkt. No. 12 at 6-7.  Therefore, Logsdon's allegation in the original complaint, which was signed under penalty of perjury [Dkt. No. 1 at 11], concerning London's personal participation is relevant information.

*Estelle*, 429 U.S. at 104-05 (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. To the extent Logsdon is complaining of the delay in his treatment, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Further, negligence, or even gross negligence, does not constitute deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 106 (negligence); *Berry v. City of Muskogee*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (negligence or gross negligence).

Here, the Court finds Logsdon's allegation that he wrote to London, explaining that Crawford was giving him the wrong medication does not raise a reasonable inference that London was subjectively aware of any substantial risk of harm to Logsdon, or that London failed to take reasonable measure to abate the risk. The fact that Logsdon allegedly received the wrong medication for a few days does not itself necessarily implicate any violation of his constitutional

6

rights. "[T]here is no Eighth Amendment violation when jail officials give the wrong medication to an inmate unless they were aware the inmate would react negatively to the medication." *Martinez v. United States*, 812 F. Supp. 2d 1052, 1059 (C.D. Cal. 2010); *see also James v. Fed. Bureau of Prisons*, 79 F. App'x 417, 419 (10th Cir. 2003) (holding that plaintiff failed to allege a deliberate indifference claim, because medical staff did not knowingly administer a medication to which he was allergic); *Herndon v. Whitworth*, 924 F. Supp. 1171, 1173-75 (N.D. Ga. 1995) (holding that plaintiff who was given wrong epilepsy medication for three or four days, who told nurse the name of the correct medication, and who suffered several epileptic episodes as a result of receiving wrong medication, failed to make out a claim for medical deliberate indifference). Here, there is no allegation that London was subjectively aware that Logsdon was likely to suffer substantial harm as a result of receiving the medication at issue.

After careful review, the Court finds Logsdon has failed to state a claim against London regarding the allegedly wrong medication provided to Logsdon.

IT IS THEREFORE ORDERED that Defendant Loyd London's motion to dismiss [Dkt. No. 22] is granted.

Dated this 16th day of November 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE